EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| In re:                      | Querella          |
|-----------------------------|-------------------|
| Rolando A. Silva Iglecia    | 2004 TSPR 87      |
|                             | 161 DPR _____     |

Número del Caso: CP-1997-16

Fecha: 7 de junio de 2004

Oficina del Procurador General:

Lcda. Yvonne Casanova Pelosi
Procuradora General Auxiliar

Abogado del Querellado:

Lcdo. Arturo Negrón García

Materia: Conducta Profesional

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

INTEGRACIÓN DE SALA ESPECIAL

ORDEN

San Juan, Puerto Rico, a 7 de junio de 2004

Debido a la no intervención de la Jueza Presidenta señora Naveira Merly y de los Jueces Asociados señor Fuster Berlingeri y señora Fiol Matta, y a la inhibición del Juez Asociado señor Hernández Denton, en el caso CP-1997-16; *In re*: Rolando A. Silva Iglecia, se constituye una Sala Especial integrada por el Juez Asociado señor Rebollo López, como su Presidente, y los Jueces Asociados señor Corrada del Río y señor Rivera Pérez, a los fines de entender en el mismo.

Lo decretó y firma.

Francisco Rebollo López
Juez Asociado

Certifico:

Patricia Otón Olivieri
Secretaria del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

In re:

                                    CP-97-16
Rolando A. Silva Iglecia


     SALA ESPECIAL INTEGRADA POR EL JUEZ ASOCIADO SEÑOR REBOLLO LÓPEZ COMO SU PRESIDENTE, Y LOS JUECES ASOCIADOS SEÑOR CORRADA DEL RÍO Y SEÑOR RIVERA PÉREZ

                         PER CURIAM

          San Juan, Puerto Rico, a 7 de junio de 2004


          En In re Rodríguez Zayas[1] declinamos ejercer nuestra jurisdicción disciplinaria, frente a una situación sustancialmente similar al caso que hoy nos ocupa. En aquel caso el licenciado Rodríguez Zayas fue encontrado culpable por un jurado y pronunciado convicto por el Tribunal de Primera Instancia, por infracción a los delitos tipificados por el Artículo 205 del Código Penal de Puerto Rico[2] (retención y destrucción de documentos públicos) y el Artículo 209 de dicho

_____

[1] Res. el 26 de junio de 2000, 2000 T.S.P.R. 97, 151 D.P.R. ___ (2000), 2000 J.T.S. 110.

[2] 33 L.P.R.A. sec. 4356. Dicho artículo dispone lo siguiente:

cuerpo[3] (soborno – ocho (8) infracciones), ambos delitos graves, cometidos mientras se desempeñaba como Juez de Distrito. En la misma fecha en que fuera sentenciado por el Tribunal de Primera Instancia por tales delitos, el entonces Gobernador de Puerto Rico, honorable Pedro Rosselló González, procedió a indultarlo de todos los delitos por los cuales resultó convicto. Ese mismo día el licenciado Rodríguez Zayas renunció a su cargo de Juez de Distrito.[4] Por razón del indulto otorgado, las sentencias condenatorias

---

Todo funcionario o empleado público encargado de la custodia de los originales de cualquier documento público según definido en la Ley de Administración de Documentos Públicos de Puerto Rico, secs. 1001 et seq. del Título 3, que voluntariamente lo(s) sustrajere, destruyere, removiere, u ocultare en todo o en parte, o que permitiere hacerlo de otra persona, será sancionado con pena de reclusión por un término fijo de seis (6) años. De mediar circunstancias agravantes la pena fija establecida podrá ser aumentada hasta un máximo de diez (10) años; de mediar circunstancias atenuantes podrá ser reducida hasta un mínimo de cuatro (4) años.

[3] 33 L.P.R.A. sec. 4360. Dicho artículo dispone lo siguiente:

Todo funcionario o empleado público, o jurado, o árbitro, o cualquier persona autorizada en ley para oír o resolver alguna cuestión o controversia, que solicite o reciba, directamente o por persona intermedia, para sí o para un tercero, dinero o cualquier beneficio, o aceptare una proposición en tal sentido, por realizar un acto regular de su cargo o función, será sancionado con pena de reclusión por un término fijo de nueve (9) años. De mediar circunstancias agravantes, la pena fija establecida podrá ser aumentada hasta un máximo, de quince (15) años; de mediar circunstancias atenuantes, podrá ser reducida hasta un mínimo de seis (6) años.

[4] El indulto estaba sujeto a la condición de que el querellado renunciara a su cargo de Juez de Distrito.

dictadas quedaron sin efecto. Nunca se convirtieron en firmes, al no tener dicho abogado la oportunidad de apelar de las mismas. Por tal razón, el abogado no fue objeto de proceso de rehabilitación alguno por motivo de su conducta delictiva, factor fundamental para desempeñarse como abogado.[5]

El 14 de marzo de 1996 la Comisión de Disciplina y de Separación del Servicio por Razón de Salud de Jueces del Tribunal de Primera Instancia y del Tribunal de Circuito de Apelaciones, de aquí en adelante la Comisión, sometió a la consideración de este Tribunal un escrito titulado "Moción Informativa en Cumplimiento de Orden", en la cual nos informó que había sido notificada el 27 de diciembre de 1995, durante su vigésima séptima reunión general, que el Procurador General de Puerto Rico había presentado una querella contra el licenciado Gilberto Rodríguez Zayas, en calidad de abogado, por la comisión de delitos graves, mientras se desempeñaba como Juez de Distrito, a tenor con lo dispuesto en la sección 9 de la Ley de 11 de marzo de 1909.[6] El Procurador General le había informado a la Comisión que la querella había sido presentada el 11 de diciembre de 1995, y que había sido unida al expediente del abogado para ser sometida al Pleno de este Tribunal en una

---

[5] In re Pedro Colton Fontán, res. el 18 de junio de 2001, 2001 T.S.P.R. 91, 154 D.P.R. ___ (2001), 2001 J.T.S. 92.

[6] 4 L.P.R.A. sec. 735

fecha futura. La Comisión le informó a este Tribunal que
habían acordado paralizar los procedimientos ante sí, con
relación a la referida querella, hasta que esta Curia
emitiera una resolución sobre el procedimiento a seguirse
con relación a la misma, **en vista de que los delitos graves
por los cuales el querellado resultó convicto conllevaban
depravación moral y, además, porque el referido querellado
había sido indultado.** Sobre el particular, allí señalamos
lo siguiente:

> Debe de quedar claro que el indulto concedido
> por el señor Gobernador en este caso no priva a
> este Tribunal de su jurisdicción disciplinaria
> sobre el licenciado Rodríguez Zayas. Tampoco su
> renuncia al cargo de Juez de Distrito nos privó
> de dicha facultad. No obstante, a pesar de estar
> conscientes de las graves faltas imputadas a
> dicho abogado en los dos procedimientos
> disciplinarios iniciados en su contra,
> actuaciones en las cuales incurrió en sus
> funciones como Juez de Distrito a cuyo cargo ha
> renunciado; y considerando además, la
> circunstancia específica de que las sentencias
> dictadas en su contra nunca se convirtieron en
> firmes por resultar académico apelar de las
> mismas en virtud del indulto de que fuera objeto
> el querellado por parte del señor Gobernador; **y
> por entender que se <u>cumplen mejor los objetivos
> rehabilitadores perseguidos por el referido
> indulto</u>, otorgando de este modo nuestra
> <u>deferencia a la autoridad constitucional del
> Gobernador de Puerto Rico</u>, quien concediera dicho
> perdón después de considerar todos los factores
> presentes en el caso de marras, se <u>declina el
> ejercicio de nuestra jurisdicción disciplinaria
> en este asunto</u>.** (Énfasis y subrayado nuestro.)

II

Los hechos que provocan la querella ante nos, se
remontan al 1990, cuando el querellado ocupaba el cargo de
miembro del Senado de Puerto Rico. Como resultado de una

auditoría realizada por la Oficina del Contralor de Puerto Rico, sobre las operaciones fiscales del Senado de Puerto Rico, se designó un Fiscal Especial Independiente (FEI) para que investigara las actuaciones del querellado. Esta auditoría cubrió todas las operaciones fiscales sobre reclutamiento y administración del personal asignado a la oficina del entonces senador Silva Iglecia y otras transacciones relacionadas. Cubrió el período de aproximadamente diez años desde el 1 de agosto de 1982 al 30 de junio de 1992. De ésta se desprendió que el licenciado Silva, en su función de senador utilizó para su beneficio personal los trabajos y servicios pagados por el Gobierno de Puerto Rico para realizar trabajos y servicios relacionados a su práctica privada de la abogacía y su negocio de bienes raíces.

El FEI presentó cuatro cargos de carácter grave en contra del licenciado Silva por violación al Art. 201 del Código Penal de Puerto Rico.[7]  Como resultado de estos

---

[7] 33 L.P.R.A. sec. 4352. El mismo dispone lo siguiente:

> Todo funcionario o empleado público que empleare en beneficio suyo o de un tercero trabajos o servicios pagados por el Gobierno del Estado Libre Asociado de Puerto Rico, los municipios, agencias, corporaciones públicas, subdivisiones políticas y demás dependencias, será sancionado con pena de reclusión por un término fijo de tres (3) años. De mediar circunstancias agravantes, la pena establecida podrá ser aumentada hasta un máximo de cinco (5) años; de mediar circunstancias atenuantes, podrá ser reducida a un mínimo de dos (2) años. El tribunal podrá imponer la pena de restitución, en adición a

procedimientos criminales, el licenciado Silva accedió a una

alegación preacordada el 31 de enero de 1996.  Mediante

dicha alegación las partes llegaron a los siguientes

acuerdos:

> El Fiscal Especial Independiente reclasificará los casos por infracción al Art. 201 del Código Penal de Puerto Rico a infracciones al Art. 214 del Código Penal, 33 L.P.R.A. sec. 4365[8] y el licenciado Silva se declararía culpable de los cuatro cargos por infracción al Art. 214, supra.

> El licenciado Silva habría de restituir al erario público la suma de cuarenta mil ($40,000) dólares en concepto de sueldos pagados a Brunilda Maldonado Rodríguez y/o gastos incurridos por la oficina del FEI en la tramitación de los casos criminales.

> El acusado cumpliría tres (3) meses de reclusión por cada uno de los cuatro cargos a cumplirse de forma consecutiva, un año en total, en la libre comunidad bajo el régimen de sentencia suspendida.

Así las cosas, el 29 de marzo de 1996 el querellado se

declaró culpable de cuatro cargos por violación al Art. 214

del Código Penal, supra, y fue sentenciado ese mismo día a

cumplir cuatro penas de tres meses, consecutivamente, bajo

---

la pena de reclusión establecida, de hasta la totalidad de la suma de la cual se trate.

[8] 33 L.P.R.A. sec. 4365.  Dicho artículo dispone lo siguiente:

> Toda omisión voluntaria en el cumplimiento de un deber impuesto por la ley o reglamento a un funcionario o empleado público, o persona que desempeñarse algún cargo o confianza o empleo público de no existir alguna disposición señalando la pena correspondiente a dicha omisión, se penará con reclusión que no excederá de seis (6) meses o multa que no excederá de quinientos ($500)dólares o ambas penas a discreción del tribunal.

el régimen de sentencia suspendida, a tenor con lo dispuesto

en la Ley Núm. 259 de 3 de abril de 1946.[9]

Tres años después de que le fuera impuesta la

sentencia, el 29 de diciembre de 1999, el entonces

Gobernador de Puerto Rico, honorable Pedro Rosselló

González, le concedió al aquí querellado un indulto total y

absoluto.

El Procurador General presentó querella contra el

licenciado Rolando Silva Iglecia el 11 de julio de 1997.

Formuló el cargo siguiente:

> Como resultado de los hallazgos de una
> auditoria [sic] efectuada por la Oficina de la
> Contralora de Puerto Rico cubriendo el período
> del 1 de agosto de 1982 al 30 de junio de 1992
> se presentaron cargos en contra del Lic. Rolando
> Silva Iglecia por haber utilizado para su
> beneficio personal, los trabajos o servicios
> pagados por el Gobierno del Estado Libre
> Asociado de Puerto Rico. Específicamente se
> desprendió que el querellado había utilizado los
> servicios de su entonces secretaria para
> realizar entre otros trabajos y/o servicios
> relacionados con su práctica privada de la
> abogacía.

> Como resultado de los procedimientos
> criminales incoados en su contra, dicho letrado
> efectuó una alegación preacordada por cuatro
> cargos menos graves por infracción al Artículo
> 214 del Código Penal de Puerto Rico.

> La Sección 9 de la Ley de 11 de marzo de
> 1907 [sic], dispone lo siguiente:

> > El abogado que fuere culpable de
> > engaño, conducta inmoral (malpractice),
> > delito grave (felony) <u>o delito menos
> > grave (misdemeanor) en conexión con el
> > ejercicio de su profesión</u> o que fuere
> > culpable de cualquier delito que
> > implicare depravación moral, podrá ser

---

[9] 34 L.P.R.A. sec. 1026, et seq.

suspendído o destituído [sic] de su profesión por la corte [sic] Suprema de Puerto Rico. **(Énfasis en el original.)** La persona que siendo abogado fuere convicto de un delito grave cometido en conexión con la práctica de su profesión o que implique depravación moral, cesará convicta que fuere, de ser abogado o de ser competente para la práctica de su profesión. A la presentación de una copia certificada de la sentencia dictada a la corte [sic] Suprema, el nombre de la persona convicta será borrado, por orden de la corte, del registro de abogados. **Al ser revocada dicha sentencia, o mediante el perdón del Presidente de los Estados Unidos o del Gobernador de Puerto Rico, la Corte Suprema estará facultada para dejar sin efecto o modificar la orden de suspensión.** (Énfasis nuestro.)

POR TODO LO CUAL, y a la luz de lo expuesto, solicitamos respetuosamente de este Ilustre Foro que imponga al abogado Rolando A. Silva Iglecia las sanciones que correspondan.

Mediante Resolución de 29 de septiembre de 2000, designamos a la licenciada Ygrí Rivera de Martínez para que, en presencia de las partes y en calidad de Comisionada Especial, recibiera la prueba y nos rindiera un informe con sus determinaciones de hechos y las recomendaciones que estimara pertinentes.

Durante la celebración de la vista evidenciaria ante la Comisionada Especial, el 6 de noviembre de 2000, el querellado solicitó la desestimación y/o el archivo de la querella presentada en su contra. **Arguyó que los objetivos rehabilitadores reconocidos por el indulto se dieron en su totalidad en su persona.** Alegó haber recibido, en adición a la sentencia, la sanción resultante de la grave exposición

pública con anterioridad, durante y con posterioridad al procedimiento judicial. **Sostuvo ante la Comisionada, que habiendo cumplido con las condiciones que se le impusieron en su sentencia, ante el perdón ejecutivo y conforme a lo actuado por este Tribunal en In re Rodríguez Zayas, supra, debía desestimarse y decretarse el archivo de la querella presentada en su contra.**

El Procurador General sostuvo que el caso del aquí querellado es distinguible del caso del licenciado Rodríguez Zayas. Expresa que a diferencia de la conducta desplegada por dicho letrado, el aquí querellado hizo alegación de culpabilidad preacordada por cuatro (4) cargos menos graves, cumplió su sentencia con todas las condiciones impuestas y restituyó al erario cuarenta mil dólares ($40,000). Tres (3) años más tarde fue indultado por el Gobernador de Puerto Rico, lo cual considera constituye una experiencia aleccionadora que razonablemente permite inferir que contribuyó y continúa contribuyendo a la rehabilitación del querellado. Coincidió con el querellado que lo actuado por este Tribunal en el caso del Ex Juez de Distrito, licenciado Gilberto Rodríguez Zayas, es pertinente al asunto que nos ocupa.

Luego de ponderadas las posiciones de ambas partes, y evaluado el expediente, la Comisionada Especial nos sometió informe relacionado con tal asunto y nos recomendó lo siguiente:

> Ante las circunstancias particulares que surgen de la querella presentada contra el Lcdo. Silva Iglecia y a tenor de la doctrina establecida en el citado caso de Rodríguez Zayas, recomendamos con gran respeto a ese Honorable Tribunal que se pondere decretar la desestimación y archivo de dicha querella.

III

Este Tribunal tiene la facultad de suspender del ejercicio de su profesión a un abogado que fuere encontrado culpable de algún delito grave o delito menos grave, en conexión con el ejercicio de su profesión, o de un delito que implique depravación moral. En los casos en que el Gobernador de Puerto Rico le conceda un indulto a algún miembro de la clase togada podemos ejercer nuestra facultad de dejar sin efecto o modificar la orden de su suspensión como abogado.[10]

El indulto es "un acto de clemencia ejecutiva, una gracia".[11] Emana el ejercicio de ese poder de la ley fundamental del Estado, la Constitución de Puerto Rico.[12] Si bien es cierto que un indulto borra la convicción del acusado, la concesión de éste no tiene la facultad de borrar los actos cometidos por el querellado, a los fines de determinar su suspensión o desaforo, cuando éste es un miembro de la clase togada. Sobre el particular en In re

---

[10] 4 L.P.R.A. sec. 735.

[11] El Pueblo de Puerto Rico v. Albizu Campos, 77 D.P.R. 888 (1955).

[12] Documentos Históricos, 1 L.P.R.A., Art. IV, Sec. 4.

Casablanca,[13] citando a Peo. v. Weeber, 26 Colo. 229, 231 57

P. 1079, expresamos lo siguiente:

> El indulto, o el pago de una multa, o el cumplimiento de una sentencia puede devolver a uno sus derechos civiles –puede borrar el delito cometido– pero no puede borrar el acto de que él fue declarado culpable, y es el acto lo que la corte considera en estos procedimientos de *disbarment*.

A pesar de lo que expresamos en el caso antes citado, en In re Rodríguez Zayas, supra, este Tribunal declinó discrecionalmente ejercer su jurisdicción disciplinaria, por **entender que se cumplieron satisfactoriamente los objetivos rehabilitadores perseguidos por el indulto, otorgando de este modo esta Curia deferencia a la autoridad constitucional del Gobernador de Puerto Rico, quien concediera dicho perdón después de considerar todos los factores presentes en ese caso.**

En In re Peña Peña,[14] dispusimos la suspensión indefinida e inmediata del ejercicio de la abogacía del licenciado Joaquín Peña Peña. Este último fue acusado por el delito de apropiación ilegal de fondos públicos, Artículo 166(a) del Código Penal de Puerto Rico.[15] Hizo alegación de culpabilidad, preacordada con el Ministerio Público, en

---

[13] 30 D.P.R. 399 (1922). En consideración a la buena conducta presentada por dicho abogado, con posterioridad a la convicción, este Tribunal lo admitió al ejercicio de la profesión en el 1932. In re Justo Casablanca, 43 D.P.R. 160 (1932).

[14] Res. el 27 de marzo de 2001, 2001 TSPR 49,153 D.P.R. _____ (2001), 2001 J.T.S. 48.

[15] 33 L.P.R.A. sec. 4272 (a).

varios casos por el delito menos grave de omisión en el cumplimiento del deber impuesto por ley o reglamento, Artículo 214 del Código Penal de Puerto Rico.[16] Se le impuso una pena de cien dólares ($100) de multa en cada caso.

En cumplimiento de la Resolución emitida por este Tribunal, el Procurador General presentó querella contra el licenciado Peña Peña el 4 de noviembre de 1994, imputándole los cargos siguientes:

CARGO I

El licenciado Joaquín Peña Peña **violó el Canon 38 de Ética Profesional**, el cual obliga a todo abogado a preservar el honor y la dignidad de la profesión de la abogacía y de desempeñarse en forma digna y honorable, tanto en su vida profesional como en su vida privada. (Énfasis nuestro.)

CARGO II

El licenciado Joaquín Peña Peña **incurrió en conducta constitutiva de depravación moral,** lo cual lo incapacita y lo hace indigno de ostentar el título de abogado según lo dispuso este Ilustre Foro en Colegio de Abogados v. Barney, 109 D.P.R. 845 (1980). (Énfasis nuestro.)

La evidencia presentada durante la vista evidenciaria celebrada ante un Comisionado Especial designado por este Tribunal demostró que el licenciado Peña Peña incurrió en la práctica de "empleados fantasmas" deshonrando su posición como Senador y malversando los fondos públicos que habían sido asignados a su oficina.

---

[16] 33 L.P.R.A. sec. 4365.

En In re Peña Peña, supra, resolvimos que no es procedente la suspensión de un abogado, a tenor con lo dispuesto en la sección 9 de la Ley de 11 de marzo de 1909, supra, cuando éste no ha sido convicto por el delito grave que originalmente se le imputara, por haber hecho alegación de culpabilidad, preacordada con el Ministerio Público, por un delito menos grave, cuando las circunstancias fácticas de la comisión de ese delito menos grave no tienen relación con sus funciones como abogado y tal delito no constituye depravación moral.  No obstante, hemos resuelto que si se demuestra que la conducta del abogado no le hace digno de ser miembro de este foro, podemos ejercer nuestra facultad disciplinaria, aunque las actuaciones del abogado hayan surgido por causas no relacionadas con el ejercicio de su profesión, pues basta que tales actuaciones afecten las condiciones del querellado.[17]

Concluimos en In re Peña Peña, supra, que la conducta del querellado no ocurrió en el desempeño de la profesión de abogado.  Al momento de los hechos el querellado ejercía funciones de Senador.  No obstante, **puntualizamos que las funciones legislativas, cuando son ejercidas por un abogado, no están desvinculadas del todo del "quehacer legal" por lo que cuando éste se desempeña en la función legislativa debe observar, en el ejercicio de tales funciones, una conducta que se ajuste a lo dispuesto en los Cánones de Ética**

---

[17] In re Rivera Cintrón, 114 D.P.R. 481, 491 (1983); Colegio de Abogados v. Barney, 109 D.P.R. 845 (1980).

**Profesional**. Esta Curia sostuvo tal conclusión sobre la aplicación a esos hechos del Canon 38 de los de Ética Profesional. Expresamos, que la prueba desfilada ante el Comisionado Especial demostró que el querellado faltó a su compromiso con la comunidad, que lo eligió para servirle como Senador, y a la clase togada, que confió en que éste mantendría su buen nombre.

Veamos los hechos y circunstancias que acontecieron en In re Rodríguez Zayas, supra, en In re Peña Peña, supra, y en el presente caso.

El licenciado Rodríguez Zayas fue encontrado culpable de los delitos de infracción al Artículo 205 del Código Penal (retención y destrucción de documentos públicos) y de ocho (8) infracciones al Artículo 209 de dicho Código (soborno), ambos delitos graves. El delito de soborno conlleva depravación moral. El mismo día en que se dictó sentencia fue indultado, por lo que no tuvo que cumplir su sentencia. Es decir, nunca pagó a la sociedad por los delitos que cometió. No estuvo sujeto a proceso de rehabilitación alguno. Tampoco fue sujeto de un proceso disciplinario formal por este Tribunal.

El licenciado Joaquín Peña Peña fue acusado por el delito de apropiación ilegal, Artículo 166(a) del Código Penal de Puerto Rico, supra. Hizo alegación de culpabilidad, preacordada con el Ministerio Público, por varios cargos de violación al Artículo 214 del Código Penal, supra, delito menos grave, imponiéndole el Tribunal de

Primera Instancia como pena una multa de cien dólares ($100) en cada uno de ellos. Cumplió con su sentencia, según dictada por el Tribunal. Surge de la Opinión Per Curiam que emitiera este Tribunal en ese caso, que el licenciado Peña Peña devolvió los fondos públicos utilizados ilegalmente por éste. No fue indultado. La querella presentada en su contra por el Procurador General configura los cargos antes mencionados. El proceso disciplinario al que estuvo sometido fue gobernado, en cuanto al desfile de la prueba, por los cargos formulados y los hechos imputados originalmente al querellado, mientras se desempeñaba como legislador.

El querellado en el presente caso fue acusado (cuatro cargos) por el delito de aprovechamiento por funcionario de trabajos o servicios públicos, Artículo 201 del Código Penal de Puerto Rico, supra. Hizo alegación de culpabilidad por cuatro (4) cargos de violación al Artículo 214 del Código Penal, supra, delito menos grave. Cumplió con su obligación ante la sociedad; extinguió su sentencia, según dictada por el Tribunal de Primera Instancia; y satisfizo las condiciones que le fueron impuestas. Restituyó al Gobierno de Puerto Rico la suma de cuarenta mil dólares ($40,000) por concepto del salario de su secretaria, señora Brunilda Maldonado Rodríguez, y por los gastos en que incurrió la Oficina del Fiscal Especial Independiente. La querella presentada en su contra fue al amparo de la sección 9 de la Ley de 11 de marzo de 1909, supra.

La consistencia en nuestros pronunciamientos imparte una apariencia de justicia e imparcialidad a nuestras decisiones. Sobre el particular, en In re Belk, Serapión,[18] el Juez Asociado señor Rebollo López señaló en Opinión Concurrente lo siguiente:

> [A]un cuando es correcto que la **consistencia** en nuestras decisiones no es una garantía absoluta de la corrección de las mismas, no hay duda que la misma resulta ser de gran importancia. En **primer** lugar, ser consistentes imprime estabilidad, confiabilidad y credibilidad a nuestro sistema de justicia. En **segundo** término, y desde el ámbito individual, la consistencia nos brinda tranquilidad de conciencia. **Por otro lado**, y desde un punto de vista institucional, la misma evita que el Tribunal emita decisiones injustas; ello así ya, que si juzgamos a todo el mundo en forma consistente, resulta casi imposible que caigamos en la injusticia. (Énfasis en el original.)

En casos de conducta profesional resulta ser singularmente importante el emitir decisiones consistentes con nuestras determinaciones anteriores. Ello es así, porque al decidir este Tribunal de determinada manera, en cierta situación fáctica, crea en los abogados la impresión de que nuestra postura será la misma en situaciones sustancialmente similares. Sobre el particular, señalamos en In re Marchand Quintero,[19] lo siguiente:

> No obstante, reconocemos que en la medida en que este Tribunal declinó ejercer su jurisdicción disciplinaria ante hechos similares en *In re: Rivera Cruz*, 126 D.P.R. 768 (1990), **nuestro curso**

---

[18] Res. el 28 de junio de 1999, 99 TSPR 121, 148 D.P.R. ___ (1999), 99 J.T.S. 126. Opinión Concurrente emitida por el Juez Asociado señor Rebollo López.

[19] Res. el 14 de septiembre de 2000, 2000 TSPR 134, 151 D.P.R. ___ (2000), 2000 J.T.S. 145.

**de acción allí pudo haber creado en algunos abogados la impresión de que dicha conducta resultaba permisible.** Igualmente, ha influido favorablemente en nuestro ánimo tanto el que el letrado haya aceptado la apariencia impropia de sus actos, como el que éste se haya disculpado formalmente con el magistrado Rivera González. No hemos podido ignorar el hecho que en veintiséis (26) años de práctica privada activa de la abogacía, éste sea el primer asunto disciplinario que se presenta contra el licenciado Marchand Quintero. (Énfasis nuestro.)

**Por los fundamentos antes expuestos, pautamos la norma aquí consignada para que se aplique de forma prospectiva. En consecuencia, intimamos a la clase togada de Puerto Rico a no incurrir en este tipo de conducta. Se apercibe que el incumplimiento con lo aquí pautado podría dar lugar al ejercicio de nuestra jurisdicción disciplinaria y a la imposición de serias sanciones.** (Énfasis nuestro.)

Se dictará sentencia de conformidad.

El caso ante nos presenta situaciones similares a las presentadas en el caso de In re Peña Peña, supra. En ambos casos los querellados fueron acusados por delitos graves, y como consecuencia de un acuerdo con el Ministerio Público hicieron alegación de culpabilidad por un delito menos grave, Artículo 214 del Código Penal de Puerto Rico, supra. También presenta diferencias. Veamos. En el caso ante nos el querellado recibió un indulto total y completo del Primer Ejecutivo, después de extinguir mediante el beneficio de una sentencia suspendida una pena de cárcel, a ser cumplida en forma consecutiva, de tres (3) meses de cárcel en cada caso, que sumaron doce (12) meses. Recibió tal indulto el 29 de septiembre de 1999, tres (3) años después de impuesta la referida sentencia condenatoria, habiendo cumplido

satisfactoriamente con todas las condiciones allí dispuestas. En el caso del licenciado Peña Peña se le impuso una multa de cien dólares ($100) en cada caso penal por el que registró alegación de culpabilidad por el delito menos grave contemplado en el Artículo 214 del Código Penal de Puerto Rico, supra, y no fue indultado. En el caso del licenciado Peña Peña se formularon cargos por conducta constitutiva de depravación moral y, además, por violación al Canon 38 de Ética Profesional. No se le formuló cargo alguno a tenor con la sección 9 de la Ley de 11 de marzo de 1909, supra. Al licenciado Silva Iglecia se le formuló cargo a tenor con la sección 9 de la Ley de 11 de marzo de 1909, supra, como hemos podido apreciar.

El caso ante nos presenta situaciones similares a las presentadas en el caso de In re Rodríguez Zayas, supra. En ambos casos los querellados fueron indultados por los delitos por los cuales resultaron culpables y convictos ante el Tribunal de Primera Instancia. En ambos casos se inició querella contra los dos abogados, a tenor con la sección 9 de la Ley de 11 de marzo de 1909, supra. También presenta diferencias. El licenciado Rodríguez Zayas, actuando como Juez de Distrito, fue encontrado culpable y convicto de los delitos de retención y destrucción de documentos públicos y de soborno, según los hechos imputados originalmente por el Ministerio Público; ambos delitos graves. El delito de soborno conlleva depravación moral. El licenciado Silva Iglecia fue encontrado culpable y convicto de un delito

menos grave, que por sí solo no conlleva depravación moral, como consecuencia de una alegación preacordada con el Ministerio Público. Por tal razón, no fue procesado penalmente por el delito grave imputado originalmente de violación al Artículo 201 del Código Penal de Puerto Rico, supra, (aprovechamiento por funcionario de trabajos o servicios públicos).

Ante esas similitudes y diferencias de los casos de In re Rodríguez Zayas, supra, y de In re Peña Peña, supra, con el presente asunto, este Tribunal se encuentra ante las interrogantes siguientes: ¿Debe ser sujeto de un procedimiento disciplinario formal el aquí querellado por los hechos imputados originalmente por el Ministerio Público, constitutivos de aprovechamiento por funcionario público de trabajos o servicios públicos, tomando en consideración la querella presentada en su contra, a tenor con la sección 9 de la Ley de 11 de marzo de 1909, supra, y el indulto total y completo recibido del Primer Ejecutivo por los delitos por los cuales resulto culpable y convicto? ¿Debe este Tribunal actuar en forma consistente con lo actuado en In re Rodríguez Zayas, supra, y/o lo pautado en In re Marchand Quintero, supra, por imperativo del derecho del aquí querellado a un debido proceso de ley, garantizado por la Constitución de Puerto Rico y la de Estados Unidos? No nos presenta duda alguna, que ante lo actuado por este Tribunal en el caso de In re Rodríguez Zayas, supra, al presente asunto le es aplicable lo establecido por esta

Curia en In re Marchand Quintero, supra. Allí dispusimos que cuando lo actuado por este Tribunal al declinar el ejercicio de nuestra facultad disciplinaria crea en los abogados la impresión de que determinada conducta resulta permisible, y posteriormente decidimos formular norma a los efectos que tal conducta por el contrario es impermisible, su aplicación tiene que ser prospectiva.

El licenciado Silva Iglecia fue acusado por el delito grave de aprovechamiento por funcionario de trabajos o servicios públicos (cuatro (4) cargos). Como consecuencia de un acuerdo con el Ministerio Público hizo alegación de culpabilidad por el delito menos grave (cuatro (4) cargos) de omisión en el cumplimiento de un deber impuesto por ley o reglamento, que por sí solo no conlleva depravación moral. La querella presentada por el Procurador General contra el aquí querellado está centrada y puntualizada sobre la comisión de un delito menos grave (misdemeanor), en conexión con el ejercicio de su profesión, a tenor con lo dispuesto en la sección 9 de la Ley de 11 de marzo de 1909, supra.[20]

Concluimos que era razonable que a base de lo actuado por este Tribunal en In re Rodríguez Zayas, supra, el aquí querellado recibiera la impresión que el indulto por él recibido le hiciera acreedor a igual trato que el recibido por el licenciado Rodríguez Zayas, tomando en consideración la querella presentada en su contra en el caso ante nos.

_____

[20] Nótese que en la querella del Procurador General se le imprime énfasis por ese funcionario a tal modalidad contemplada en dicho estatuto.

También era razonable que el aquí querellado tuviera la impresión que al concedérsele tal indulto había alcanzado los mismos objetivos rehabilitadores que alcanzó el licenciado Rodríguez Zayas al otorgársele el suyo, en vista de que él, a diferencia de éste último, cumplió la totalidad de su pena y satisfizo en forma cumplida todas y cada una de las condiciones impuestas por el Tribunal de Primera Instancia, que le hizo merecedor de la gracia del Primer Ejecutivo.

Entendemos, que son relevantes y materiales las anteriores consideraciones en el descargo de la función normativa, que es esencial y primordial de este Tribunal como parte del ejercicio jurisprudencial que aquí descargamos. El presente asunto exige de esta Curia la formulación de norma con carácter prospectivo, atendido lo pautado en In re Marchand Quintero, supra.

Desde hoy le hacemos claro a la clase togada que el ejercicio de nuestra jurisdicción disciplinaria rebasa y es irrespectivo del indulto o perdón del poder ejecutivo a un abogado convicto de un delito. Basta que la conducta del abogado en su condición de juez, legislador o en cualquier otra actividad, irrespectivo del delito que resulte convicto, sea incompatible con los Cánones de Ética Profesional que rigen la conducta de los miembros de la clase togada, para que este Tribunal ejerza su jurisdicción disciplinaria.

IV

Por los fundamentos antes expuestos, pautamos la norma aquí consignada para que aplique de forma prospectiva.  En consecuencia, intimamos a la clase togada de Puerto Rico a ajustarse en su conducta a los Cánones de Ética Profesional y a proteger siempre el buen nombre de la noble profesión de abogado.  Un indulto o perdón ejecutivo a un abogado por la comisión de un delito no lo exime de su responsabilidad y obligación ante este Tribunal de honrar la toga en la forma y medida que exigen tales normas éticas.

Se dictará Sentencia de conformidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

In re:


Rolando A. Silva Iglecia

                              CP-97-16



        SALA ESPECIAL INTEGRADA POR EL JUEZ ASOCIADO SEÑOR REBOLLO LÓPEZ COMO SU PRESIDENTE, Y LOS JUECES ASOCIADOS SEÑOR CORRADA DEL RÍO Y SEÑOR RIVERA PÉREZ

SENTENCIA

San Juan, Puerto Rico, a7 de junio de 2004.


        Por los fundamentos expuestos en la Opinión *Per Curiam* que antecede y con relación a la acción disciplinaria contra el licenciado Rolando A. Silva Iglecia, se dicta sentencia decretando el archivo del caso.

        La norma antes consignada se aplicará de forma prospectiva.  Intimamos a la clase togada de Puerto Rico a no incurrir en este tipo de conducta.  Se apercibe que el incumplimiento con lo aquí pautado podría dar lugar al ejercicio de nuestra jurisdicción disciplinaria y a la imposición de serias sanciones.

        Así lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo.  El Juez Asociado Hernández Denton inhibido. La Jueza Presidenta señora Naveira Merly, el Juez Asociado señor Fuster Berlingeri, y la Jueza Asociada señora Fiol Matta no intervinieron.



                              Patricia Otón Olivieri
                              Secretaria del Tribunal Supremo